UNITED STATES of America, Appellee,

v.

John PFORZHEIMER,
Defendant-Appellant.

No. 793, Docket 86–1282.

United States Court of Appeals,
Second Circuit.

Argued Feb. 3, 1987.

Decided Aug. 18, 1987.

Duncan Frey Kilmartin, Newport, Vt. (Rexford & Kilmartin, Newport, Vt., of counsel), for defendant-appellant.

Patti R. Page, Asst. U.S. Atty., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty. for the D.Vt., Donald P. Moroz, Asst.

U.S. Atty., Burlington, Vt., of counsel), for appellee.

Before LUMBARD, PIERCE, and ALTIMARI, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from a judgment of conviction entered in the District of Vermont, Coffrin, *Chief Judge,* convicting appellant John Pforzheimer after a jury trial of violating 21 U.S.C. § 841(a)(1), (b)(1) & (c) [sic], by manufacturing marijuana in an amount not exceeding 50 kilograms. On appeal, appellant contends, *inter alia,* that the district court erred in failing to apply state, or a combination of state and federal, constitutional law to the suppression issues in the case, and because the district court used interrogatories in connection with the jury's verdict which included a question stated in the disjunctive regarding whether appellant was guilty or not guilty. For the reasons stated below, we affirm.

## BACKGROUND

The defendant, John Pforzheimer, and his twin brother, Robert Pforzheimer, were indicted by a federal grand jury in 1985 of narcotics offenses in violation of 21 U.S.C. §§ 841 and 846: manufacturing in excess of 50 kilograms of marijuana, attempting to manufacture and possess with intent to distribute marijuana in excess of 50 kilograms, and conspiracy to manufacture marijuana in excess of 50 kilograms. The indictment arose out of a Vermont state police investigation of the cultivation of marijuana on property owned by the two Pforzheimers, which spans approximately one thousand acres of land in Newport Center, Vermont.

The Vermont authorities began their investigation of the Pforzheimers in 1982. At that time, John Pforzheimer was arrested on charges stemming from the manufacture of marijuana. The state trooper who made the arrest, one Roland Prairie, also became aware of a business known as the Stone Pfactory operated by the Pforzheimer brothers, in which they sold drug paraphernalia prior to the adoption of the anti-paraphernalia law in Vermont. All state charges were later dropped against John after the evidence seized as a result of the 1982 investigation was suppressed.

In investigating the instant case, Trooper Prairie, along with a state police officer and a state game warden, although they had no warrant, crept onto the southern portion of the property owned by the two brothers. While there, these state authorities observed 40–50 marijuana plants growing in the "open fields." The police officer and trooper also met with an informant who stated that the Pforzheimers had been growing marijuana on their property for years. Further, the trooper had flown over the Pforzheimer property and viewed large plots of dark green vegetation that did not appear to him to be normal.

Based on the search of the property and the informant's information, Trooper Prairie prepared the necessary papers for a search warrant for each of the Pforzheimers' residences. The warrant was issued by a Vermont state court. On July 24, 1985, state officers executed the warrant with respect to John Pforzheimer's residence and discovered approximately 4400 marijuana plants on the jointly-owned property. Upon learning that Robert Pforzheimer rented out his usual residence and resided elsewhere, the state officers sought and obtained a warrant to search the place where Robert Pforzheimer actually resided. State officers executed the second warrant on July 25, 1985, and uncovered marijuana, weapons, incriminating photographs and material used for drying marijuana.

John Pforzheimer was arrested on July 24, 1985, and Robert Pforzheimer, on July 25, 1985. Each was charged with two felony violations of Vermont's marijuana laws in the Vermont District Court. On August 2, 1985, federal complaints were issued against the two Pforzheimer brothers and on August 6, 1985, the state charges against John Pforzheimer were dropped because "federal charges are being brought against John Pforzheimer." Both brothers filed pretrial motions before Judge Coffrin, who denied all the motions. After a trial by jury, Robert Pforzheimer was acquitted

of all charges; John Pforzheimer was convicted of knowingly and intentionally manufacturing some amount of marijuana in an amount less than 50 kilograms. John Pforzheimer was sentenced to four years in prison to be followed by a three year special parole term and a fine of $50 was assessed against him.

Appellant argues on appeal that evidence obtained as a result of the open fields search of the Pforzheimer property should have been suppressed. Appellant contends that the district court erroneously applied federal constitutional law at the suppression hearing, noting that the district court applied the open fields doctrine of *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), in admitting evidence obtained from the open fields search of the Pforzheimer property. If Vermont constitutional law had been applied, appellant contends, the evidence would have been suppressed. Appellant further argues that the district court erred by providing a verdict form with interrogatories to the jury. The government argues that the district court properly applied federal law at the suppression hearing and that the district court's use of the jury verdict form was not error. We consider each of these issues in turn.

## DISCUSSION

### I. APPLICATION OF STATE OR FEDERAL LAW

■ We are presented here with the novel issue of whether the state or federal exclusionary rule should be applied in ruling on a motion to suppress evidence in a criminal trial in federal court when the evidence in question was solely the product of a state investigation. Appellant urges that we should apply state constitutional standards because the open fields search, the issuance and execution of the warrant, and the seizure of evidence were all conducted by Vermont authorities, without federal participation. Specifically, appellant argues that we should apply the exclusionary rule under the Vermont Constitution with respect to the search of an open field. The government contends that federal law should be applied to the prosecution of cases in federal court, and, therefore, that the open fields doctrine of *Oliver v. United States*, was properly applied in this case.

In asserting that state rather than federal law is applicable, appellant makes two arguments. First, he urges that the state, rather than the federal, exclusionary rule should apply to his case because the federal prosecution relied upon an investigation conducted entirely by state officers. Second, he argues that, in the interests of comity and fairness, we should adopt a federal exclusionary rule that would exclude evidence seized by state officers in violation of a state constitution which provides broader protections than the federal Constitution.

Specifically, appellant claims that interpretation of the Vermont Constitution would not permit that State to adopt the open fields doctrine under the federal Constitution as set forth in *Oliver v. United States*. Appellant acknowledges that the federal Constitution does not prohibit the search of open fields but he claims that the evidence seized as a result of the open fields investigation of the Pforzheimer property would have been suppressed under Vermont law. Appellant bases this claim upon the difference between the search and seizure clauses in the United States and Vermont Constitutions. The fourth amendment of the United States Constitution protects against unreasonable searches and seizures of persons, houses, papers, and *effects* while the Vermont Constitution refers to persons, houses, papers, and *possessions*. Appellant posits that the word "possessions" is more inclusive than the word "effects," and therefore, that the Vermont Constitution would preclude an open fields warrantless search as an unreasonable search. This question apparently has not been considered by Vermont's appellate courts since no case has been cited by appellant, and our research has uncovered none, in which the Vermont courts have held that the open fields doctrine as enunciated in *Oliver* would be inconsistent with the Ver-

mont Constitution. *But cf. State v. Neale,* 145 Vt. 423, 491 A.2d 1025, 1028–29 (1985) (application of fourth amendment open fields doctrine to Vermont state criminal case).

Notwithstanding the fact that the Vermont courts have not decided whether the open fields doctrine as per *Oliver* applies in Vermont, appellant argues that a strict state exclusionary rule should have been applied in the federal district court because the search and seizure of the evidence here was conducted solely by state officers. If we adopt appellant's reasoning, we must first determine whether an open fields search was a reasonable search under the Vermont Constitution, and then applying state law, or a combination of state and federal law, we must determine whether evidence seized as a result of the open fields search should be suppressed. For the reasons stated below, we decline to adopt appellant's arguments and we hold that federal constitutional law must be applied to the suppression issues in this case.

In *United States v. Turner,* 558 F.2d 46, 49 (2d Cir.1977), we held that it is appropriate to apply federal law in a federal case, even where the evidence was seized in violation of state law. However, in *Turner,* a United States Customs agent was involved in procuring the evidence that would have been suppressed under state law. *See also United States v. Magda,* 547 F.2d 756, 757 n. 2 (2d Cir.1976), *cert. denied,* 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977). In this case we must determine the narrower issue of whether federal law still applies when there has been *no* participation by a federal agent in the challenged investigation or acquisition of evidence.

The government urges that *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), is dispositive of this issue. We disagree. In *Elkins* the Supreme Court held that evidence seized by state officials in violation of the United States Constitution is subject to the federal exclusionary rule. *Elkins* involved a federal prosecution in which a challenge was raised as to the admissibility of evidence

obtained by state officers during a search that would have violated the defendant's fourth amendment protection against unreasonable searches and seizures if conducted by federal officers. *Elkins* did not address the issue of whether *state* constitutional considerations could restrict the admissibility of evidence in a *federal* prosecution. However, the Court noted that in the determination of whether there has been an unreasonable search or seizure, "[t]he test is one of *federal* law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." *Id.* at 224, 80 S.Ct. at 1447 (emphasis added). We are in agreement with the district court that *Elkins* generally stands for the proposition that "federal law governs federal prosecutions in federal court."

This view is also supported by *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). In *Olmstead,* the Court addressed the issue of whether evidence obtained by federal officers in violation of a state statute must be suppressed in a federal prosecution. In holding that federal law applies, the Court noted the importance of uniformity of criminal evidentiary jurisprudence in the federal courts. *Id.* at 469, 48 S.Ct. at 569. Moreover, in *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), the Supreme Court stated that: "The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers." The combined effect of *Elkins, Olmstead,* and *Preston* is to establish the general proposition that federal law is applicable in a federal prosecution even when there has been state involvement in the case.

Appellant's strongest support for the proposition that state constitutional law should apply in this federal case is to be found in dictum in a Ninth Circuit case, *United States v. Henderson,* 721 F.2d 662, 665 (9th Cir.1983) (per curiam), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984): "there is much to be

said for the argument that federal courts should, in the interest of comity, defer to a state's more stringent exclusionary rule with respect to evidence secured without federal involvement." Since *Henderson,* the Ninth Circuit has continued to leave the question open. *See, e.g., United States v. Alexander,* 761 F.2d 1294, 1298 (9th Cir. 1985). However, all other circuits that have been presented with this issue have concluded that "evidence admissible under federal law cannot be excluded because it would be inadmissible under state law." *United States v. Quinones,* 758 F.2d 40, 43 (1st Cir.1985); *see, e.g., United States v. Montgomery,* 708 F.2d 343, 344 (8th Cir. 1983); *United States v. Combs,* 672 F.2d 574, 578 (6th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *United States v. Shaffer,* 520 F.2d 1369, 1372 (3d Cir.1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976); *United States v. Infelice,* 506 F.2d 1358, 1365 (7th Cir.1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975); *United States v. Miller,* 452 F.2d 731, 733–34 (10th Cir.1971), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2466, 32 L.Ed.2d 813 (1972); *United States v. Castillo,* 449 F.2d 1300, 1301 n. 2 (5th Cir.1971) (per curiam); *see also United States v. Bonilla Romero,* 639 F.Supp. 1021, 1022 (D.P.R.1986) ("federal law governs the admissibility of evidence in federal trials"); *United States v. Bassford,* 601 F.Supp. 1324, 1333 (D.Me. 1985) (there is no authority that violation of state constitutional provision by state officer would bar use of illegally obtained evidence in federal prosecution), *aff'd,* 812 F.2d 16 (1st Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987).

Appellant also offers a policy reason for applying state constitutional principles under the circumstances of this case. He asserts that if state law is not applied, a state prosecutor who is faced with evidence that might be suppressed in a state court prosecution may forum shop and instead use the federal courts. We are unpersuaded by this argument. A state prosecutor whose case relies on evidence that may be inadmissible in a state court trial has no power or authority to effect a prosecution in federal court. The initiation of a federal prosecution depends entirely on the discretion of the federal prosecutor. "[T]he courts should presume that the prosecution was pursued in good faith execution of the law. The prosecutor's discretion is limited by constitutional principles of equal protection and due process...." *United States v. Bassford,* 812 F.2d 16, 19 (1st Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987) (footnote omitted). We find appellant's argument unpersuasive on the facts of this case.

Indeed, we believe there are several policy considerations which support the application of federal law herein. Clearly, it is important that there be uniformity of evidentiary rules among the federal courts. *See Olmstead,* 277 U.S. at 469, 48 S.Ct. at 569. Moreover, the case at bar clearly illustrates the danger inherent in applying state constitutional principles in federal criminal cases. As discussed above, it is unclear whether the Vermont Constitution would require a more stringent construction of the open fields doctrine than that required by *Oliver.* Thus, if state law were to be applied herein, we would have to decide the breadth of Vermont constitutional law; specifically, whether, under Vermont law, a state official may search an open field without a warrant. Since we find it unnecessary to do otherwise, we believe the interests of comity would be served best if we left this issue to the Vermont Supreme Court for determination when the issue arises in that court.

In view of the Supreme Court cases that we have cited, the weight of authority in the other circuits, and policy considerations, we are persuaded that federal law should apply to this federal criminal prosecution, even though the underlying investigation leading to prosecution was conducted solely by state officials.

## II. THE VERDICT

### (a) *Unanimity*

▮ Appellant assigns error to the district court claiming that the jury's verdict which found him guilty of manufacturing

marijuana or aiding and abetting his brother in the manufacture of marijuana, is defective because it is "uncertain, contingent, and less than unanimous." Appellant bases this claim on the interrogatory in the verdict form submitted to the jury which was stated in the disjunctive.

Question 2a of the verdict form was framed as follows:

> Do you find the defendant John Pforzheimer guilty or not guilty of knowingly and intentionally manufacturing some amount of marijuana, or aiding and abetting the other defendant, Robert Pforzheimer, in doing so?

The jury returned a verdict of guilty. Appellant contends that since the jury found John Pforzheimer guilty in the alternative, the verdict could be upheld only if there is sufficient evidence to convict on each basis. *See United States v. Peterson,* 768 F.2d 64, 67–68 (2d Cir.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985). We need not address this issue because, assuming the jury acted in a consistent manner and followed the instructions of the district court, the jury only could have found John Pforzheimer guilty of manufacture. Although we believe that the subject verdict interrogatory should not have been presented to the jury in the disjunctive, we find that its use was harmless in this case.

It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge. *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.), *cert. denied,* 469 U.S. 918 & 934, 105 S.Ct. 297 & 332, 83 L.Ed.2d 232 & 269 (1984); *see also United States v. Kaplan,* 510 F.2d 606, 611 (2d Cir.1974). In his charge to the jury, Judge Coffrin instructed:

> The Defendant may not be found guilty of the aiding and abetting offense unless all the elements of a principal crime have been satisfied with respect to the principal actor.

This was a joint trial of John and Robert Pforzheimer; the jury returned a verdict of not guilty as to Robert Pforzheimer and at the same time returned a verdict of guilty as to John Pforzheimer. Since Robert Pforzheimer was acquitted of all charges, all of the elements of the principal crime of manufacture were not established with respect to Robert Pforzheimer, who was the principal actor as to the aiding and abetting charge as to appellant. Since a jury is presumed to act logically and follow the court's instructions, *see Potamitis,* the jury could not have found appellant guilty as an aider and abettor of Robert Pforzheimer, who was acquitted. Hence, it is clear that the jury found appellant guilty of manufacture only. Since the nature of the verdict of the jury is clear—that John Pforzheimer was guilty of manufacture only—appellant's claim that the verdict was fatally flawed as uncertain and less than unanimous is without merit. We repeat that while we do not approve of the district court's disjunctive question, we conclude that it resulted in no harm in this case.

**(b)** *Jury Interrogatories*

■ Appellant next argues that jury interrogatories are generally disfavored in this Circuit except when they have a legitimate, particularized fact-finding purpose. While it is true that jury interrogatories in criminal cases are generally disfavored in this Circuit, under the circumstances of this case, we do not think that the district court erred by providing the jury with interrogatories.

In *United States v. Adcock,* 447 F.2d 1337, 1339 (2d Cir.) (per curiam) (citing *United States v. Spock,* 416 F.2d 165, 182–83 (1st Cir.1969)), *cert. denied,* 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971), we held that "[s]pecial verdicts as to a single count are improper and in and of themselves erroneous." Since *Adcock,* however, our court has repeatedly implied that the use of jury interrogatories [1] in criminal trials is not *per se* impermissible, but rather is generally disfavored. *See, e.g., Unit-*

---

**1.** As Judge Newman noted in *United States v. Ruggiero,* 726 F.2d 913 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984), the term "special verdict" is often used to mean jury interrogatory. However, as contemplated by Fed.R. Civ.P. 49, special verdicts are used to elicit specific responses in lieu of a general verdict, while jury interrogatories are used to elicit specific findings in conjunction with a general verdict. 726 F.2d at 926 n. 1.

ed States v. Orozco-Prada, 732 F.2d 1076, 1084 (2d Cir.), cert. denied, 469 U.S. 845, 105 S.Ct. 155, 83 L.Ed.2d 92 (1984); United States v. Ruggiero, 726 F.2d 913, 926 (2d Cir.) (Newman, J., concurring in part, dissenting in part), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 85 L.Ed.2d 60 (1984); United States v. Murray, 618 F.2d 892, 895 n. 3 (2d Cir.1980); United States v. Stassi, 544 F.2d 579, 583–84 (2d Cir.1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1176, 1177, 51 L.Ed.2d 582 (1977). Judge Newman noted in his concurring opinion in Ruggiero that Adcock reflected a rejection of "the prosecution's effort to salvage an invalid conviction by faulting the defendant for failing to request interrogatories," implying that the language of Adcock should be limited to the facts in that case. 726 F.2d at 926. Moreover, we have recognized that it is not error for a district court to use jury interrogatories when the information sought is relevant to the sentence to be imposed. Stassi, 544 F.2d at 583–84; accord United States v. Buishas, 791 F.2d 1310, 1317 (7th Cir.1986). Indeed, in Orozco-Prada, we held that the district judge would have had no way of knowing whether defendant was convicted of a cocaine-related conspiracy or a marijuana-related conspiracy absent use of jury interrogatories. 732 F.2d at 1083.

 In light of these general principles relating to the use of jury interrogatories in a criminal trial, we do not believe that the district court erred by submitting interrogatories to the jury in this case. A violation of 21 U.S.C. § 841(a) carries a penalty "[i]n the case of less than 50 kilograms of marijuana ... of not more than 5 years." 21 U.S.C. § 841(b). In this case, the jury was asked: "Do you find that the defendant John Pforzheimer manufactured or aided and abetted the other defendant in manufacturing in excess of 50 kilograms (110.23 pounds) of marijuana?" As in Orozco-Prada, "there was no way" for the judge to know whether John Pforzheimer had manufactured more or fewer than 50 kilograms of marijuana unless the question was asked

specifically. Since this information was relevant to the determination of John Pforzheimer's sentence, the use of the jury interrogatory was not error. See Stassi; Accord United States v. General Nutrition, Inc., 638 F.Supp. 556, 563 (W.D.N.Y.1986). Moreover, this case is distinguishable from Adcock, where we frowned upon the use of jury interrogatories with respect to a "single count" of the indictment. Here there were four counts. One was dismissed during the charging conference; interrogatories were submitted to the jury with respect to the other three. Hence, in light of the particularized fact-finding function of the jury interrogatories in this case, and their relevance to sentencing, the district court committed no error by using them in this case.[2]

## CONCLUSION

We have considered appellant's other arguments and find them to be without merit. For the reasons stated above, we affirm the judgment of conviction.

---

**2.** In any event, even if the use of the jury interrogatories was erroneous, "appellant[s] failed to object to the practice adopted by the District Court and may not now be heard to complain."

Stassi, 544 F.2d at 584. While defense counsel objected to certain questions asked of the jury he did not object to the general use of the jury interrogatories.