**UNITED STATES of America, Appellee,**

v.

**Gerald ROWELL, a/k/a "Jerry or Jerome," Defendant–Appellant.**

**No. 851, Docket 89–1512.**

United States Court of Appeals, Second Circuit.

Argued March 8, 1990.

Decided May 16, 1990.

Lawrence J. Andolina (Harris, Beach & Wilcox, Rochester, N.Y., of counsel), for defendant-appellant.

Bradley E. Tyler, Asst. U.S. Atty., Rochester, N.Y. (Dennis C. Vacco, U.S. Atty. W.D.N.Y., of counsel), for appellee.

Before KAUFMAN, MESKILL and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Gerald Rowell appeals from a judgment of conviction, entered in the United States District Court for the Western District of New York

(David G. Larimer, *Judge*). Rowell pled guilty to one count of possessing marijuana with intent to distribute and two counts of distributing marijuana, all in violation of 21 U.S.C. § 841(a)(1) (1988). He asserts that the district court improperly denied his pretrial motion to suppress certain evidence obtained through electronic eavesdropping. That evidence was collected pursuant to a state-issued warrant which, according to Rowell, lacked any basis of probable cause.

On this appeal, Rowell argues that his conviction must be reversed since the district court erred in finding sufficient probable cause to support issuance of the eavesdropping warrant. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

In the Fall of 1986, state and federal law enforcement agents initiated an investigation of Rowell and several others in connection with alleged narcotics activity in Monroe County, New York. On January 12, 1987, the Monroe County district attorney applied to County Court Judge Egan for an eavesdropping warrant authorizing a wiretap on telephones at Rowell's residence and at his business, The Smuggler's Cove Bar and Grill ("The Smuggler's Cove").

The basis for the warrant consisted of affidavits of several law enforcement officials. The affidavit of Rochester Police Officer Earl J. Lergner contained information that Rowell had been convicted of possessing 350 pounds of marijuana in Florida in 1984. Rowell's Florida conviction followed a "reverse buy" in which he purchased marijuana, for $105,000 in cash, from an undercover Palm Beach County police officer. During the transaction, Rowell revealed to the officer that he could regularly distribute over 1,000 pounds of marijuana per week and suggested a long-term supplier relationship with the officer. In addition, the Lergner affidavit described pen register records of telephone calls made to and from Rowell's residence and business telephones. The pen register records revealed that between September 1986 and December 1986, approximately 1,000 outgoing calls were made and 1,000 incoming calls were received on the telephone at Rowell's residence. During the same period, over 2,200 outgoing calls and 200 incoming calls were registered on the telephone at The Smuggler's Cove. In the opinion of Officer Lergner, an experienced drug enforcement agent, the high number of calls exceeded the normal volume for a private residence or small business and was, in fact, consistent with narcotics trafficking. Officer Lergner also observed that at least three calls had been placed in June 1986 from Rowell's residence and business to one Jeffrey Weisberg who, within several months of the calls, was arrested after delivering one pound of highly pure cocaine. Also, at least two calls had been placed from The Smuggler's Cove to Brazil, a frequent port of origin for narcotics shipments to the United States.

The affidavit of Monroe County Deputy Sheriff John Gagne disclosed that a named informant had observed Rowell sell large quantities of narcotics on several occasions in Monroe County. The Gagne affidavit further established that another named informant was present when Rowell had in his possession a large quantity of cocaine in the basement office of The Smuggler's Cove.

The wiretaps authorized by Judge Egan's warrant made clear that Rowell was involved in narcotics trafficking. As the wiretap evidence pointed to an interstate narcotics conspiracy, criminal proceedings were initiated in federal court. On May 26, 1988, a United States Grand Jury, sitting in the Western District of New York, returned an indictment against Rowell and several other individuals. The indictment charged the defendants with thirty-seven counts, twenty-eight of which named Rowell. The charges against Rowell included: participating in a conspiracy to possess with intent to distribute and to distribute cocaine and marijuana; possessing with intent to distribute marijuana; distributing various quantities of marijuana; and intentionally using a telephone to facilitate a conspiracy to possess with intent to

distribute and to distribute cocaine and marijuana.

Rowell made a pre-trial motion to suppress the wiretap evidence on the ground, *inter alia,* that the eavesdropping warrant was not supported by sufficient probable cause. Specifically, the defendant argued that since the warrant was issued by a New York state court judge, the district court should apply the more stringent New York standard for probable cause, not the federal "totality of the circumstances" standard. The district court denied Rowell's motion, concluding that probable cause for the warrants existed under either federal law or New York State law.

Following the denial of his suppression motion, Rowell entered into a plea agreement with the government. Under the terms of the agreement, Rowell entered guilty pleas to one count of possessing marijuana with intent to distribute and two counts of distributing marijuana, in violation of 21 U.S.C. § 841(a)(1). The agreement stipulated that Rowell retained his right to appeal the denial of his motion to suppress the wiretap evidence pursuant to Fed.R.Crim.P. 11(a)(2). On September 26, 1989, the district court sentenced Rowell to 24–months imprisonment on each of the three counts to which he pled guilty. The district court ordered that the three sentences be served consecutively, for a total of 72–months imprisonment. In addition, the court imposed a term of supervised release to follow the period of incarceration, a $25,000 fine, and a $150 special assessment. This appeal followed.

## DISCUSSION

I. *The Applicable Standard*

On appeal, as in the district court, Rowell contends that federal courts should apply state warrant requirements, if they are more stringent than applicable federal requirements, to state-issued warrants. Rowell further argues that New York has rejected the federal standard for probable cause articulated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in favor of the more restrictive *Aguilar-Spinelli* test. *See People v. Gri-*

*minger,* 71 N.Y.2d 635, 529 N.Y.S.2d 55, 57, 524 N.E.2d 409, 411 (1988) ("We are not persuaded, however, that the *Gates* approach provides a sufficient measure of protection, and we now hold that, as a matter of State constitutional law, the *Aguilar-Spinelli* two-prong test should be applied in determining whether there is a sufficient factual predicate upon which to issue a search warrant."); *see also Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Accordingly, Rowell asserts that the district court should have applied the *Aguilar-Spinelli* test in determining whether to admit the wiretap evidence against him and that, under the *Aguilar-Spinelli* test, the evidence should have been suppressed. We disagree.

■ In *United States v. Pforzheimer,* 826 F.2d 200, 202 (2d Cir.1987), we addressed the issue of "whether the state or federal exclusionary rule should be applied in ruling on a motion to suppress evidence in a criminal trial in federal court when the evidence in question was solely the product of a state investigation." We concluded that "federal law should apply to ... federal criminal prosecution[s], *even though the underlying investigation leading to prosecution was conducted solely by state officials." Id.* at 204 (emphasis added). Similarly, in *United States v. Nersesian,* 824 F.2d 1294, 1306 (2d Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987), we applied federal law in determining the admissibility of evidence obtained under a state-issued warrant which authorized wiretapping by state and federal authorities. As the opinions in *Pforzheimer* and *Nersesian* make clear, the appropriate standard of probable cause for determining Rowell's motion to suppress the wiretap evidence is the federal "totality of the circumstances" standard. *See Gates,* 462 U.S. at 230–32, 103 S.Ct. at 2328.

■ This conclusion, which flows directly from our prior decisions, is supported by prior decisions of the Supreme Court. *See, e.g., Preston v. United States,* 376 U.S.

364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) ("The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers."); *Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960) ("The test [for admissibility of evidence] is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."). The decisions of other circuits also support our conclusion. *See, e.g., United States v. Quinones*, 758 F.2d 40, 43 (1st Cir.1985) ("[I]n federal prosecutions evidence admissible under federal law cannot be excluded because it would be inadmissible under state law."); *United States v. Combs*, 672 F.2d 574, 578 (6th Cir.), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982) ("[S]tates are not free to impose on Federal courts requirements more strict than those of the Federal laws or Constitution."). Policy considerations, particularly a concern for the "uniformity of criminal evidentiary jurisprudence in the federal courts," *Pforzheimer*, 826 F.2d at 203 (citing *Olmstead v. United States*, 277 U.S. 438, 469, 48 S.Ct. 564, 569, 72 L.Ed. 944 (1928), *overruled on other grounds, Katz v. United States*, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)), further support the application of federal law in federal criminal prosecutions which rely on state investigations.

Rowell argues that policy considerations weigh in favor of applying more stringent state standards in federal criminal prosecutions. He cites dicta in *United States v. Sotomayor*, 592 F.2d 1219, 1224–26 (2d Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), that applying the federal standard in the face of a stricter state standard might encourage forum shopping by state authorities. *See also United States v. Spadaccino*, 800 F.2d 292, 296–97 (2d Cir.1986); *United States v. Manfredi*, 488 F.2d 588, 598 (2d Cir.1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974). However, this argu-

ment was considered and rejected in *Pforzheimer*:

A state prosecutor whose case relies on evidence that may be inadmissible in a state court trial has no power or authority to effect a prosecution in federal court. The initiation of a federal prosecution depends entirely on the discretion of the federal prosecutor.... [and we] "should presume that the [federal] prosecution was pursued in good faith execution of the law."

826 F.2d at 204 (citation omitted). Thus, a district court must apply the *Gates* standard for probable cause to a motion to suppress evidence obtained under a state-issued wiretap warrant, despite the existence of a stricter state standard for admissibility.

## II. *Application of the Standard*

Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause for a search warrant is established if the "totality-of-the-circumstances" indicate a probability of criminal activity. *Id.* at 230–32, 103 S.Ct. at 2329. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. at 2329. This same standard applies to wiretap warrants. *United States v. Fury*, 554 F.2d 522, 530 (2d Cir.1977), *cert. denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). On appellate review, a determination of probable cause deserves "great deference," and will be upheld so long as there was "a 'substantial basis for ... conclud[ing]' that a search warrant would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331 (citation omitted); *see Nersesian*, 824 F.2d at 1306.

In the present case, there is substantial evidence supporting the district court's determination that probable cause existed for authorization of the wiretap. The Lergner and Gagne affidavits contain information, including the pen register records and the informants' statements, which amply support the conclusion that

Rowell was engaged in narcotics activity. Rowell's prior narcotics conviction and his contacts with another individual involved in narcotics activity further support the probable cause determination. Considering the "totality of the circumstances," the issuance of the wiretap warrant was certainly justified. Accordingly, the district court's refusal to suppress the evidence obtained under that warrant will not be disturbed.

Rowell contends that, since the informants' statements contained in the Gagne affidavit were obtained in 1985, they were too stale to support the January 12, 1987 wiretap warrant. "[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law." *United States v. Martino*, 664 F.2d 860, 867 (2d Cir.1981), *cert. denied*, 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982). Moreover, "[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Feola*, 651 F.Supp. 1068, 1090 (S.D.N.Y.1987), *aff'd mem.*, 875 F.2d 857 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). Given the continuous nature of narcotics conspiracies and Rowell's statements to the Florida undercover officer about his on-going marijuana distribution operation, the approximately 18–month delay between procuring the informants' statements and seeking the wiretap warrant did not render the information stale. Moreover, the wiretap warrant was not based solely on the informants' statements. In fact, even without those statements, the Lergner affidavit demonstrated probable cause to support the warrant.

■ Finally, we agree with the district court that probable cause for the wiretap warrant was sufficient under either the *Gates* standard or the *Aguilar-Spinelli* standard. The *Aguilar-Spinelli* test is a two-prong inquiry into "(i) the veracity or reliability of the source of the information, and (ii) the basis of the informant's knowl-edge." *Griminger*, 529 N.Y.S.2d at 56, 524 N.E.2d 409. As adopted in New York, the *Aguilar-Spinelli* test is not "a hypertechnical approach to evaluating hearsay information." *Id.* at 57, 524 N.E.2d 409. Rather, warrant applications "must be considered in the clear light of everyday experience and accorded all reasonable inferences." *Id.* at 58, 524 N.E.2d 409.

■ In the present case, Rowell concedes that the allegations contained in the warrant application satisfy the basis of knowledge prong of the *Aguilar-Spinelli* test. He contends that the government failed to adequately establish the veracity or reliability of the two informants. However, sufficient indicia of veracity and reliability existed to sustain probable cause under the *Aguilar-Spinelli* test. The informants described in the Gagne affidavit were witnesses to Rowell's involvement in narcotics activity. They were not professional informants whose reliability might be suspect. "[A] witness to a crime 'need *not* be shown to have been previously reliable before the authorities may rely on his statements.'" *United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir.1986), *cert. denied*, 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 531 (1987) (emphasis in original) (citation omitted). *See United States v. Burke*, 517 F.2d 377, 380 (2d Cir.1975) ("*Aguilar* and *Spinelli* [were] addressed to the particular problem of professional informers and should not be applied in a wooden fashion to ... information ... from an alleged victim of or witness to a crime."). In addition, the reliability of one of the informants is indicated by his statement, made against his penal interest, that he had personally purchased cocaine from Rowell. *See United States v. Napolitano*, 761 F.2d 135, 139 (2d Cir.), *cert. denied*, 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985). Moreover, the statements of both informants are corroborated by the pen register records described in the Lergner affidavit. *See Feola*, 651 F.Supp. at 1090.

## CONCLUSION

We have examined each of Rowell's remaining arguments and find them to be

without merit. In light of the foregoing, we affirm the judgment of the district court.