143 F.3d 728
 UNITED STATES Of America, Appellee,
v.
Jose ORTIZ, a/k/a "Chole", a/k/a "Charlie"; Christine
Rivera, aka Virginia Rivera, aka "Virginia";
Miguel Marrero, a/k/a "Mike"; Frank
Traynham; Ivan Mendoza;
Withberto Cepeda, Defendants,
Juan Nieves, a/k/a, "Johnny", Defendant-Appellant.
 No. 26, Docket 96-1183.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 23, 1997.
Decided May 8, 1998.
 
 Steven V. Manning, Assistant United States Attorney, Hartford, CT (Christopher F. Droney, United States Attorney for District of Connecticut, Hartford, CT, of Counsel), for Appellee.
 Margaret P. Levy, Hartford, CT, for Defendant-Appellant.
 Before: MESKILL, JACOBS, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 Upon an indictment filed in the United States District Court for the District of Connecticut, Juan Nieves was convicted after jury trial before Janet Bond Arterton, Judge, of conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C §§ 846 and 841(a)(1). Because he had been previously convicted of a felony narcotics offense in the Connecticut state courts, Nieves was sentenced as a multiple narcotics offender under the mandatory provision of 21 U.S.C. § 851(a)(2) and 841(b) to a mandatory minimum term of 120 months imprisonment.
 
 
 2
 Relying on our recent holding in United States v. Collado, 106 F.3d 1097 (2d Cir.1997), Nieves contends that the mandatory minimum sentence provision did not apply to him because his prior conviction was not prosecuted by indictment.
 
 
 3
 We affirm the conviction. In so doing, we overrule our decision in Collado interpreting § 851(a)(2). Arguments and representations about the state of the law presented in this case but not in Collado have persuaded us that Collado was incorrectly decided.[1]
 
 BACKGROUND
 
 4
 In August, 1995, Nieves was charged by a federal indictment with conspiracy to possess heroin with intent to distribute. 21 U.S.C. §§ 841(a)(1), 846. Prior to the federal indictment, Nieves pleaded guilty to a narcotics felony in Connecticut state court, pursuant to a procedure of the Connecticut criminal law that does not utilize indictment by grand jury. The United States thus filed a previous offender information under 21 U.S.C. § 851(a) alleging that Nieves had been previously convicted in the Connecticut courts of felony possession of narcotic drugs and that this constituted a prior conviction justifying a sentence enhancement under 21 U.S.C. §§ 841(b) and 851.
 
 
 5
 Nieves was tried on the federal indictment in December 1995. The trial ended in a hung jury. He was retried in April 1996. This time the jury found Nieves guilty.
 
 
 6
 The sentencing guideline range for Nieves's federal conviction was 108 to 135 months. The court found, however, that Nieves's liability as a second felony narcotics offender had been established, so that 21 U.S.C. § 841(b)(1)(B) required a sentence of 120 months as the mandatory minimum. He was accordingly sentenced to 120 months imprisonment as well as a period of supervised release and a mandatory special assessment.
 
 DISCUSSION
 Section 851(a)(2) provides:
 
 7
 An information [alleging a previous felony narcotics offense and thus triggering the enhanced penalty provision of § 841(b) ] may not be filed ... if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.
 
 
 8
 21 U.S.C. § 851(a)(2) (emphasis added).
 
 
 9
 Relying on this statute, Nieves contends that the 120-month mandatory minimum sentence for repeat offenders provided by 21 U.S.C. § 841(b)(1)(B) could not apply to him because his previous offense was not prosecuted by indictment. He argues that the requirement of "prosecution by indictment" (or waiver thereof) refers to the prior felony offense, not the instant offense. He therefore asserts that the § 851 information was improper and the sentence enhancement is inapplicable. The United States contends he misread the statute. It argues that the phrase "offense for which such increased penalty may be imposed" refers to the instant offense, not the previous one, and that, as the instant offense was prosecuted by indictment, the requirement is satisfied.
 
 
 10
 In United States v. Collado, 106 F.3d 1097 (2d Cir.1997), a panel of this court faced the same question of statutory interpretation. There, the offender was prosecuted by indictment for a federal narcotics offense and had been previously convicted in the local courts of Puerto Rico for a felony narcotics offense not prosecuted by indictment. In support of its contention that the requirement of an indictment applied only to the instant offense, the United States relied on three arguments. The government first argued that to consider the prior offense as the one "for which such increased punishment [was being] imposed" would contravene the Ex Post Facto Clause. See id. at 1101; see also United States v. Adams, 914 F.2d 1404, 1407 (10th Cir.) (applying § 851(a)(2) to the instant offense in part to avoid ex post facto objection), cert. denied, 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990); United States v. Espinosa, 827 F.2d 604, 617 (9th Cir.1987)(same), cert. denied, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988). The Collado panel rejected this argument. See Collado, 106 F.3d at 1101-02. Enhanced sentencing for recidivism has long been approved notwithstanding that the prior offenses occurred prior to passage of the enhancement provision, see Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948); the lawfulness of the procedure cannot depend on the semantic factor of whether a recidivism statute refers to the first conviction, or the second, or the combination of the two as requiring the enhancement. In each case, the effect would be exactly the same.
 
 
 11
 The government's second argument in Collado was that, had § 851(a)(2) intended to identify the previous conviction as the one for which prosecution by indictment was required, it would have used the term "prior conviction(s)" or "previous convictions," as § 851 uses those terms elsewhere. 106 F.3d at 1102; see also Espinosa, 827 F.2d at 617 ("Had Congress intended [the appellant's] interpretation, it seems that the phrase simply would have read 'prosecution by indictment in the prior conviction.' "). We observed in response that it might equally be said that "had Congress intended to refer to the instant offense, it seems it would have referred to 'an offense under this part,' or simply to 'the offense.' " Collado, 106 F.3d at 1102. Congress could have drafted § 851(a)(2) to express either meaning clearly, and so the inherent ambiguity of the passage as legislated supports neither meaning.
 
 
 12
 Finally, the Collado panel rejected the argument that applying § 851(a)(2) to the prior offense would improperly restrict the reach of § 841 "[d]espite Congress's ... evident attempt in 1984 [when it passed the amended sentence enhancement provision of § 841(b) ] to broaden the scope of § 841(b) prior convictions to include state and foreign convictions (in addition to federal convictions)." Id. at 1102 (quoting Espinosa, 827 F.2d at 617) (first alteration in original). We agreed that Congress intended to, and did, broaden § 841(b) in 1984, but found no evidence to illuminate the issue whether Congress intended to include prior convictions where the defendant was not afforded the protection of prosecution by indictment. Id.
 
 
 13
 Collado noted that several circuits had accepted these arguments. See United States v. Brown, 47 F.3d 1075, 1078 (11th Cir.1995) (per curiam); United States v. Harden, 37 F.3d 595, 601, (11th Cir.1994); United States v. Trevino-Rodriguez, 994 F.2d 533, 536 (8th Cir.1993); United States v. Burrell, 963 F.2d 976, 993 (7th Cir.), cert. denied, 506 U.S. 928, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992); Adams, 914 F.2d at 1407; Espinosa, 827 F.2d at 617. We nevertheless found them unpersuasive.
 
 
 14
 The defendant in Collado, meanwhile, advanced the argument that, as federal felony narcotics prosecutions are only by indictment (or waiver), the requirement of § 851(a)(2) that the prosecution be by indictment would be surplusage if it referred to the present (federal) prosecution. According to the Collado defendant's argument, the provision would be meaningful only if it applied to the prior prosecutions because only they could be nonfederal and therefore otherwise than by indictment. 106 F.3d at 1103. The government in Collado offered nothing to rebut this argument.
 
 
 15
 The Collado panel concluded that § 851(a)(2) was ambiguous. The panel could find no basis for deciding whether it was meant to apply to the instant or prior prosecution. Accordingly, we invoked the rule of lenity to hold that the defendant's "sentence [in that case] should not be enhanced on the basis" of a prior conviction prosecuted without grand jury indictment or the waiver thereof. Id.[2]
 
 
 16
 We reconsider the question because the United States has provided new information that supports its interpretation of § 851(a)(2) far more convincingly than any argument advanced in Collado. The government's briefing shows that at the time § 851(a)(2) was formulated in 1970, federal felony narcotics violations were prosecutable without indictment in the Virgin Islands,[3] and the Panama Canal Zone.[4] Moreover, in Guam, federal prosecutions proceeded without indictment until 1968.[5] The apparent redundancy of § 851(a)(2) as applied to federal prosecutions evaporates in light of this information, because the provision confers a procedural safeguard for offenders facing charges eligible for enhancement under §§ 841-45 in territorial jurisdictions where federal prosecution by information is possible.
 
 
 17
 We think this new information does much to clarify the meaning of § 851(a)(2). The provision is not free of ambiguity; it still can be interpreted to impose a requirement of grand jury indictment upon either the prior or the instant narcotics felony. Nevertheless, liberated from the apparent redundancy of the statute as applied to federal prosecutions, we find it far more sensible in terms of the structure and purpose of the statute that the grand jury guarantee refers to the instant felony offense.
 
 
 18
 Section 851 was passed as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970. The provision for enhanced sentences for repeat offenders reflected a broader Congressional concern that the penalty structure for the nation's narcotics laws permit distinction between the serious or habitual offender (who merits severe retribution) and the inconsequential, experimental user (who deserves a more modest penalty and the opportunity to reform). See H.R.Rep. No. 91-1444, pt. 1, at 10-11 (1970) reprinted in 1970 U.S.C.C.A.N. 4566, 4575-76; 116 Cong. Rec. 35,478 (1970) (statement of Sen. Kennedy); 116 Cong. Rec. 33,630-31 (1970) (statement of Rep. Weicker).[6] This concern is most reasonably addressed by applying the grand jury guarantee to the second, instant prosecution, when the defendant stands in jeopardy of the enhanced penalty. The alternative interpretation leads to paradoxical, sometimes inequitable, results.
 
 
 19
 Under the reading urged by Nieves, for example, a prosecutor for a subsequent offense would be powerless to seek a sentence enhancement where the first prosecution had proceeded by information rather than indictment. Prosecutors of first-time offenders, conversely, would be forced either to proceed by grand jury as a matter of routine to preserve the possibility of a subsequent enhancement (and thereby lose the benefits of the information procedure), or to proceed by information but compromise the possibility of subsequent enhancement. By uncoupling the decision to prosecute by grand jury from the decision to seek an enhanced penalty under § 851, Nieves's interpretation would require the prosecutor of the first offense to decide whether to indict in complete ignorance of the consequence of the decision.
 
 
 20
 We think it is more sensible to link the government's decision to seek an enhanced sentence under § 841 to its decision to prosecute by grand jury as required under § 851. This reading of the statute allows the United States to seek the statutory enhancement against any repeat offender, so long as a defendant in jeopardy of enhancement is afforded the additional protection of grand jury indictment or waiver thereof. Only this interpretation applies the procedural safeguard directly to the threat of enhancement, as Congress clearly intended. Indeed, it would be anomalous for Congress to authorize an increased sentence for a defendant prosecuted by indictment on his or her first conviction but by information on the repeat offense.
 
 
 21
 Nieves's interpretation is further flawed in that it would mandate unequal treatment of similarly situated offenders. If, as Nieves urges, the grand jury requirement applies to the prior offense, a repeat offender's liability for an enhanced sentence will hinge on the rules of criminal procedure in the jurisdiction of the first offense. Offenders with identical criminal histories, convicted of identical pairs of offenses, will receive dramatically different sentences based on the mere fortuity of whether their initial prosecution was in a jurisdiction that utilizes the grand jury procedure or, where there is a choice, how their initial prosecutor chose to proceed. We doubt that Congress intended such a result.
 
 
 22
 We conclude instead that § 851(a)(2) requires the instant, and not the prior, offense to be prosecuted by grand jury indictment or waiver thereof.
 
 
 23
 Nieves also raises two challenges to his conviction. First, he contends that the information in the affidavit supporting the warrant to search Nieves's home was too stale to support a finding of probable cause. We disagree.
 
 
 24
 Two critical factors in determining whether facts supporting a search warrant are stale are "the age of those facts and the nature of the conduct alleged to have violated the law." United States v. Martino, 664 F.2d 860, 867 (2d Cir.1981), cert. denied, 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982). Neither factor supports Nieves's staleness claim. The warrant was issued by the Superior Court of Connecticut in February, 1995. Although the affidavits supporting the warrant did include information regarding narcotics trafficking as far back as October 1994, the affidavit also contained information showing Nieves's participation in drug activity into January and February 1995. The contemporary information included specific references to drug activity involving Nieves's Howard Street address.
 
 
 25
 Moreover, when the supporting facts "present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of the application becomes less significant." Martino, 664 F.2d at 867. Thus, we have held that in investigations of ongoing narcotics operations, "intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." Rivera v. United States, 928 F.2d 592, 602 (2d Cir.1991). Indeed, "narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." United States v. Rowell, 903 F.2d 899, 903 (2d Cir.1990) (quotation marks and citation omitted).
 
 
 26
 In view of the continuous nature of the narcotics conspiracy that is charged in the indictment and described in the supporting affidavit, we reject the claim that the showing of probable cause in support of the Nieves search is impaired by staleness.
 
 
 27
 Nor is there merit to Nieves's claim that the evidence was insufficient to sustain his conviction. The government's evidence at trial included testimony that repeatedly placed Nieves at the apartment where heroin was prepared for retail distribution. Other testimony indicated that Nieves had stored heroin at his apartment, and on one occasion had sold heroin from that apartment. The evidence was sufficient for the jury to find Nieves guilty on the heroin conspiracy charge.
 
 CONCLUSION
 
 28
 The judgment of conviction is affirmed.
 
 
 
 [1]
 This opinion has been circulated prior to filing to all the active judges of this court, none of whom have objected to the overruling of our prior opinion. The members of the Collado panel agree that the result reached here would have obtained in that case had the pertinent information been provided
 
 
 [2]
 A concurring opinion agreed that "the statutory language in question is ambiguous" but believed that because "the government's reading of Section 851 creates a redundancy that makes virtually no sense," resort to the rule of lenity was unnecessary. Collado, 106 F.3d at 1105 (Winter, J. concurring)
 
 
 [3]
 See Virgin Islands Elective Governor Act, Pub.L. No. 90-496 § 11, 82 Stat. 837, 841 (1968). Indeed, the government points out that prosecution of such felony offenses by information continues today in the Virgin Islands
 
 
 [4]
 See The Canal Zone Code, Pub.L. No. 87-845, tit. 6, §§ 3501, 4011, 76A Stat. 411, 497, 514 (1962)
 
 
 [5]
 See Guam Elective Governor Act, Pub.L. No. 90-497, § 10, 82 Stat. 842, 847 (1968) (extending constitutional guarantee of grand jury indictment to Guam)
 
 
 [6]
 The congressional debates demonstrate consensus that the prevailing narcotics laws failed to distinguish adequately between one-time users, habitual users, and drug peddlers or entrepreneurs. In consequence, young, first-time users were subject to long periods of incarceration, which in turn dissuaded prosecutors from bringing charges and juries from convicting. Congress' concern to create a graded penalty scheme is evident not just in the provision for sentence enhancement for repeat offenders, but throughout the Act. See, e.g., Pub.L. No. 91-513 § 404, 84 Stat. 1236, 1264 (1970)(codified at 21 U.S.C. § 844)(providing conditional discharge and expunging of records for first offense), id. § 408, 84 Stat. at 1265 (codified at 21 U.S.C. § 848)(providing enhanced penalties for continuing drug entrepreneurs)