**UNITED STATES of America,**

v.

**Michael Ray JACKSON, Randall Parker, a/k/a Randall, a/k/a Randy Parker, a/k/a Randall Parker, Defendants.**

**No. 05–CR–174.**

United States District Court,
W.D. New York.

Sept. 1, 2006.

Terrance P. Flynn, United States Attorney, Joel L. Violanti, Assistant United States Attorney, of Counsel, Buffalo, NY, for the Government.

Thomas J. Eoannou, Esq., Eoannou, Lana & D'Amico, Buffalo, NY, for Defendant, Michael Ray Jackson.

J. Glenn Davis, Esq., Law Office of J. Glenn Davis, Buffalo, NY, for Defendant, Randall Parker.

## ORDER

ARCARA, Chief Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1)(A) on March 14, 2006. Defendants filed motions seeking suppression of eavesdropping and physical evidence. On May 17, 2006, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendants' motions should be denied.

On June 2, 2006, defendants filed a motion for extension of time to file objections to the Magistrate Judge's Report and Recommendation. The Court granted defendants' motion and extended the time to file objections to June 30, 2006. On June 26, 2006, defendants filed a second motion for extension of time to file objections to the Magistrate Judge's Report and Recommendation. The Court granted the defendants' motion and extended the time to file objections to July 26, 2006. No objections have been filed to date.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendants' motions seeking suppression of eavesdropping and physical evidence are denied. The parties shall appear on Tuesday, September 5, 2006 at 9:00 a.m. for a meeting to set a trial date.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This case was referred to the undersigned by the Hon. Richard J. Arcara on March 14, 2006 for all pretrial matters. The matter is presently before the court on Defendants' motions seeking suppression of eavesdropping and physical evidence (Doc. Nos.15, 16).

## BACKGROUND

Defendants Michael Ray Jackson ("Jackson") and Randall Parker ("Parker") ("Defendants") were initially indicted in a seven count indictment on July 7, 2005, charging violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) and 21 U.S.C. § 846. (Doc. No. 1). Specifically, Defendants are together charged in Count 1 of the Indictment with conspiracy to possess with intent to distribute, 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 21 U.S.C. § 846. ("Count 1" or "the Conspiracy Count"). Jackson is alone charged with knowingly, intentionally, and unlawfully possessing with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) on or about December 1, 2004 ("Count 2"), January 14, 2005 ("Count 3") and April 15, 2005 ("Count 6"). Parker is alone charged with

knowingly, intentionally and unlawfully possessing with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) on or about January 28, 2005 ("Count 4"), February 8, 2005 ("Count 5"), and June 3, 2005 ("Count 7").

In support of their respective motions, Parker filed the Affirmation of J. Glenn Davis, Esq. (Doc. No. 15) ("Davis Affirmation") on February 10, 2006, and Jackson filed the Affirmation of Thomas J. Eoannou, Esq. (Doc. No. 16) ("Eoannou Affirmation") on February 12, 2006.[1] ("Defendants' Motions"). The Government filed its response to Defendants' Motions on March 8, 2006 (Doc. No. 18) ("Government's Response"). Jackson filed a Reply to the Government's Response on March 12, 2006 (Doc. No. 20) ("Jackson Reply Memorandum"), and oral argument was held on March 16, 2006 (Doc. No. 22). On March 27, 2006, the Government filed the Government's Surreply to Jackson's Reply Memorandum (Doc. No. 24) ("Government's Surreply").

Defendants' Motions include requests for suppression of Title III evidence, suppression of evidence obtained pursuant to the search warrant issued on July 11, 2005, and a request for a hearing pursuant to *Franks v. Delaware.*[2] Based on the following, Defendants' Motions should be DENIED.

1. Included in these motions are requests, including severance, for certain non-dispositive relief which are addressed in a Decision and Order filed contemporaneously with this Report and Recommendation.

2. Defendants also request permission to join any pretrial motion made by their co-Defendant. Defendants' motions are GRANTED insofar as each Defendant has standing to make such requests and the relief requested was timely sought by other Moving Defendants.

## FACTS[3]

The charges in the Indictment arise from an investigation conducted by the Drug Enforcement Agency ("DEA"), the New York State Police ("NYSP"), the Niagara County Sheriff's Department ("NCSD"), the Niagara Frontier Transportation Authority ("NFTA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Buffalo Police Department ("BPD"), Federal Bureau of Investigation ("FBI") and other law enforcement agencies of an alleged cocaine possession and distribution conspiracy. Jackson and Parker are alleged co-conspirators in a drug trafficking conspiracy operating in and around Buffalo, New York. According to the Government, Jackson and Parker obtained large quantities of cocaine from suppliers who are Mexican nationals in Los Angeles, California. The Los Angeles suppliers have been identified as two brothers, Eduardo Medina and Nelson Medina ("the Medinas"). The Medinas are members of the "Florence Gang," which is involved in narcotics distribution. Investigators have learned the Medinas route the narcotics through Atlanta, Georgia before it arrives in Buffalo. The Medinas send dispatchers to Western New York where Defendants and those acting on their behalf retrieve the cocaine. According to the Government, Defendants proceed to distribute the drugs throughout Western New York utilizing mid-level dealers within their narcotics trafficking organization.

3. Taken from the pleadings and papers filed in this action and the pleadings and papers filed in connection with 05–CR–173–A, an indictment against Martellus Jones, Maurice Fisher, Emilio Galarza, Irving Mitchell, Karen Pierce, Shauncey Galarza, Daniele Liddle and Eugene Davis for criminal narcotics violations relative to the same narcotics organization, the "TALIBAN" organization.

Investigators also learned that Jackson and Parker had an independent cocaine source located in Columbus, Ohio.

Defendants and their associates within the narcotics organization refer to themselves as the "TALIBAN." Members of the TALIBAN allegedly include Martellus Jones, a/k/a Fat Bob, a/k/a Marty; Parker; Jackson; Maurice Fisher; a/k/a Reese; Emilio Galarza, a/k/a Boongo; Irving Mitchel, a/k/a Gotti; Karen Pierce, a/k/a Karen Burns, a/k/a Momma–Love; Danielle Liddle and Steven Anthony Bennett, a/k/a Stevo. Martellus Jones is the alleged leader of the TALIBAN organization.

In September 2004, DEA agents learned from a confidential informant ("CS–1") that Parker and Jackson were drug traffickers and members of a drug distribution gang which called themselves the TALIBAN. CS–1 stated that he/she would contact Martellus Jones ("Jones") on his cellular telephone, (716) 228–4556, to purchase cocaine. If CS–1 was unable to contact Jones by phone, he/she would attempt to meet Jones in person at 358 Grant Street, a "private club" operated by Jackson, or at 593 Grant Street, Jones's mother's residence, in the City of Buffalo. CS–1 could also contact Jackson at 358 Grant Street. If CS–1 could not locate Jones, Karen Pierce ("Pierce"), Jones's mother, would facilitate contact for the purpose of purchasing narcotics. CS–1 and a second confidential informant ("CS–2") advised law enforcement that when Jones goes to jail for weapons possession, Maurice Fisher will run the TALIBAN organization.

A third confidential informant ("CS–3") described Jackson and Parker as Jones's associates, and identified various residences the TALIBAN utilized for narcotics distribution. CS–1, CS–2 and CS–3 made a series of controlled purchases from Jones, Parker and Jackson at the DEA's request.

On June 9, 2005 and June 22, 2005, Buffalo Police Detective Philip Torre ("Detective Torre") filed two separate affidavits requesting telephone intercept orders from the Erie County Court. The Torre Affidavit I, filed on June 9, 2005, requested an intercept order for cellular phone numbers (716) 578–1148, (716) 228–4556 and (716) 228–4556 Push to Talk "Ready Link" Service ("PTT"). The Torre Affidavit II, filed on June 22, 2005, requested an intercept order for cellular phone number (716) 888–0930 and telephone number (716) 885–4287. Erie County Court Judge Michael L. D'Amico issued an intercept warrant for cellular telephone number (716) 578–1148, on June 10, 2005, which became effective June 13, 2005 and which was used and subscribed to by Randall Parker. Judge D'Amico also issued an intercept warrant for cellular telephone numbers (716) 228–4556 and (716) 228–4556(PTT) on June 10, 2005, which became effective June 13, 2005 and which were used by Martellus Jones and subscribed to by Karen Burns. On June 22, 2005, Judge D'Amico issued intercept warrants for numbers (716) 885–4287 and (716) 888–0930. DEA Special Agent Joseph Bongiovanni ("Agent Bongiovanni") submitted an affidavit requesting a warrant for various premises, including 108 Decker Street in Buffalo, New York and 39 Allendale Drive in Cheektowaga, New York. In his moving papers, Defendant Jackson challenges the probable cause basis for these orders, alleging that Agent Torre's description in Torre Affidavit II of the controlled narcotics purchase which took place on January 14, 2005 failed to identify any target telephone number used in the transaction. Eoannou Affirmation ¶ 51.

A confidential informant ("CS") informed DEA Special Agent Dale Kasprzyk ("Agent Kasprzyk") that Defendant Parker is a bartender at Defendant Jackson's "private club," located at 358 Grant Street.

The CS also stated Parker distributes cocaine to the club's customers and that CS could purchase cocaine from Parker. On January 28, 2005, the CS made a controlled purchase of 2½ ounces of cocaine from Parker at 358 Grant Street, which required Parker to walk behind the bar at the club and retrieve the narcotic from a different room. CS contacted Parker by cell phone number (716) 602–0897 to arrange another controlled purchase of cocaine, which was executed on February 8, 2005. On June 3, 2005, CS again contacted Parker using Parker's new cell phone number (716) 578–1148 to arrange for a controlled narcotics transaction. Similarly, controlled purchases were effected between a CS and Defendant Jackson on December 1, 2004 and January 14, 2005 at Jackson's club at 358 Grant Street.

The Grand Jury subsequently charged Parker and Jackson in a seven count sealed indictment, filed on July 7, 2005. Thereafter, several arrests and search warrants were authorized, including sealed arrest warrants for Parker and Jackson on July 7, 2005, a search warrant issued for 39 Allendale Drive in Cheektowaga, New York and for 108 Decker Street in Buffalo, New York on July 11, 2005.

## DISCUSSION

### I. *Suppression of Intercepted Electronic Communications*

#### A. Probable cause

Jackson moves to suppress any and all evidence derived from electronic eavesdropping in this case, arguing that the

Intercept Orders authorizing the eavesdropping activity were not supported by probable cause or necessity in violation of 18 U.S.C. § 2518. Eoannou Affirmation ¶ 32. Specifically, Jackson asserts that neither of the two affidavits submitted by Detective Torre in this case establish a sufficient probable cause basis for issuance of an eavesdropping warrant, *id.* ¶ 43, contending (1) that the reliability of the first and second confidential informant was not established in the affidavits; (2) that the information contained in the affidavit does not establish other individuals utilize the target telephone lines to participate in illegal drug transactions; (3) no information contained in the initial affidavit establishes that Jackson used the target telephone lines to participate in illegal drug transactions; and (4) the controlled narcotics purchase which took place on January 14, 2004 or January 14, 2005 relied upon in the second affidavit was stale when the order was issued and did not state any target telephone was used in completing the transaction.[4] *Id.* ¶¶ 45–48, 51. Jackson further asserts that Torre's initial affidavit only states that Jackson received cocaine from Martellus Jones sometime in the past and that Jackson was present at the club that Jackson operates when Parker participated in a drug sale. *Id.* ¶ 48.

Parker also moves to suppress evidence derived from these communications, alleging that (1) the communications were unlawfully intercepted in violation of 18 U.S.C. § 2518(10)(a)(i); (2) the order authorizing these interceptions was facially

---

4. The heading of the section in the affidavit which contains information regarding the January narcotics purchase states "2005," however, the descriptive paragraph within that section refers to "2004." Based on the chronological sequence of the asserted drug buys, Torre Affidavit II, ¶¶ 28–75, describing to the initial purchase by the confidential source in December 2004, the court considers

"2004" in relation to the second buy, stated to have taken place in January 2005, to be a typographical error. Torre Affidavit 2 ¶¶ 30–31. Thus, as discussed, Discussion, *infra*, at 17–18, there is no factual basis for Jackson's argument that the relevant information was, as Jackson asserts, 1½ years old, and thus stale.

insufficient in violation of 18 U.S.C. § 2518(10)(a)(ii); and (3) the interceptions did not conform with the authorizing order in violation of 18 U.S.C. § 2518(10)(a)(iii), and requests a pre-trial evidentiary hearing on these issues. Davis Affirmation ¶¶ 30–31. The court notes that Parker's allegations of unlawful interceptions are vague and generalized. For example, Parker does not explain whether he claims the communications were unlawfully intercepted based on a failure to minimize intercepted communications or that there was insufficient probable cause or necessity to justify authorizing the interception. As such, the court turns to Parker's first contention in so far as it addresses the specific challenges to probable cause and necessity.

The Government opposes Defendants' contentions in support of suppression. Specifically, the Government maintains probable cause supports all of the Intercept Orders and search warrants in that (1) the Torre affidavits in support of the Intercept Orders describe controlled purchases of cocaine by the CS; (2) the affidavit details numerous instances where Defendants utilize phones to facilitate drug distribution; (3) both affidavits contain "extensive facts" which establish probable cause; (4) as a whole, both affidavits "amply support a showing of probable cause for the interceptions"; and (5) even if one or more of the orders were not supported by probable cause, Defendants have not shown, under *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the good faith exception to the Exclusionary Rule should not apply. Government Response at 27.

In reply, Jackson argues that the *Leon* "good faith" exception to the Exclusionary Rule does not apply in this case because "[f]ederal courts have refused to engraft the *Leon* exception to state statutory requirements for the exclusion of wiretap evidence," and New York State law does not apply this exception to search warrants. Jackson Reply Memorandum at 3, (citing *United States v. Spadaccino,* 800 F.2d 292, 296 (2d Cir.1986)). Specifically, Jackson contends that "warrant applications must be tested against both federal and applicable state law," and as New York courts have determined the "good faith" exception to the Exclusionary Rule does not apply to state warrants under the New York state constitution, the "good faith" exception cannot apply in this case. Jackson Reply Memorandum at 2–4 (quoting *United States v. Vazquez,* 605 F.2d 1269, 1281 n. 26 (2d Cir.1979), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *People v. Bigelow,* 66 N.Y.2d 417, 497 N.Y.S.2d 630, 488 N.E.2d 451, 457–58 (1985)). The Government counters that Jackson's reliance on *Spadaccino* is misplaced because *Spadaccino* concerned "noncompliance of a mandatory provision of the state wiretap law," a notice requirement, "and not probable cause itself." Government's Surreply at 2. The Government further argues that, in a federal criminal prosecution, the admissibility of evidence is governed by federal law even if the underlying investigation was conducted exclusively by state officials. *Id.* at 3 (citing *United States v. Pforzheimer,* 826 F.2d 200, 202 (2d Cir.1987)). Additionally, the Government notes that Jackson does not argue that a mandatory provision of New York state law has been violated, as was alleged in *Spadaccino.* Thus, the Government maintains that the holding in *Spadaccino* is inapplicable and Jackson's motion to suppress on this ground should therefore be denied.

■ In determining whether there is probable cause for an eavesdropping warrant, the issuing judge need only make a practical, common sense decision whether, given the "totality of the circumstances" set forth in the affidavit requesting such

warrant, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that evidence of a crime will be obtained through the use of electronic surveillance. *See Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "In issuing the order the judge must exercise his own judgment, gleaned from a common-sense reading of the entire affidavit, as to whether the facts alleged constitute probable cause." *United States v. Feola*, 651 F.Supp. 1068, 1089, (quoting *United States v. Harvey*, 560 F.Supp. 1040, 1051 (S.D.Fla.1982), *aff'd sub nom. United States v. Van Horn*, 789 F.2d 1492 (11th Cir.1986)), *aff'd*, 875 F.2d 857 (2d Cir. 1989), *cert. denied sub nom., Marin v. United States*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). In assessing probable cause the test is one of a reasonably prudent person, not a legal technician. *Illinois v. Gates*, 462 U.S. at 231, 103 S.Ct. 2317; *Feola, supra*, at 1089 (citing *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). It is well settled that the standard for assessing probable cause for an eavesdropping warrant is the same as that required for a search warrant. *United States v. Fury*, 554 F.2d 522, 530 (2d Cir.1977), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

**1. Reliability of Confidential Informants**

As stated, *Discussion, supra*, at 7, Jackson argues that the reliability of the confidential informants relied upon in the Torre Affidavits was never established, resulting, according to Jackson, in the absence of probable cause. Particularly, Jackson states that the June 9, 2005 Torre Affidavit does not contain information establishing the reliability of the first CS, who attested that he/she has previously purchased cocaine from Martellus Jones, and who had contacted Jones on one telephone number, identified in the requested eavesdropping order, to engage in monthly cocaine purchases. Eoannou Affirmation ¶ 44. Similarly, Jackson argues that although a second CS stated in the initial Torre Affidavit that Jackson operated a social club on Grant Street and that Jackson was present at the club when the second CS engaged in a drug transaction with Parker, the reliability of the second CS is also not sufficiently established in the Torre Affidavit. *Id.* ¶ 46–48. Further, "the affidavit does not give any information to support the belief that any other individuals use or call the target telephones to engage in illegal activities." *Id.* ¶ 48.

The court finds the reliability of confidential sources in the first affidavit was sufficiently established to support a finding of probable cause for an authorizing order. For purposes of establishing probable cause, the Second Circuit considers an informant to be reliable if such information "is based on reliable means, such as first-hand observations or second-hand information from reliable sources, rather than unreliable means such as rumor or innuendo," and such confidential source information will be found to be "sufficiently reliable" where it has been "corroborated in material respects by independent evidence." *United States v. Wagner*, 989 F.2d 69, 72–73 (2d Cir.1993). Also, statements made by confidential informants which qualify as admissions against penal interest, including admitting to personal involvement in the alleged criminal activity or to witnessing criminal activity, is a factor to consider in establishing informant reliability. *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir.1990). The reliability of the confidential informants as to each of the intercept orders challenged on this basis can be established under one or more of these factors.

■ Here, the information contained in the initial affidavit ("Torre Affidavit I") as supplied by the confidential informants was personally obtained by them when the informants contacted Parker and Martellus Jones over the target telephone lines to set up and execute controlled drug transactions. Torre Affidavit I ¶¶ 30–48. In accordance with such phone calls, drug purchases occurred between the CS and Parker on February 8, 2005 and June 3, 2005, and between the CS and Jones on May 11, 2005. Torre Affidavit I ¶¶ 25 –36, 45–48. The CS attempted to execute a second controlled drug purchase from Martellus Jones on June 2, 2005 by calling Jones on number (716) 228–4556. *Id.* ¶ 44. Jones stated his situation was "slow motion," which the CS explained "meant that Jones was out of cocaine." *Id.*

In addition to these controlled buys and attempted purchases which were observed by the CS and investigators, the evidence provided by the confidential sources was "corroborated in material respects by independent evidence." *United States v. Wagner*, 989 F.2d at 72–73. For example, the CS informed Agent Kasprzyk that Parker is a bartender at Jackson's Grant Street club, that Parker sold cocaine to customers there, and that the CS could enter the club and purchase cocaine from Parker. Torre Affidavit I ¶ 21. On January 28, 2005, the CS executed a controlled, *i.e.,* monitored by investigators, buy of cocaine from Parker at Jackson's club, demonstrating that these transactions did occur there, and that the CS could make the purchase. *Id.* ¶¶ 25–29. While in route to make this controlled purchase, the CS conversed with the driver of the vehicle identified as Martellus Jones. *Id.* ¶ 27. Although the vehicle was then registered to Shauncey Galarza, "court sources" confirmed Jones and Galarza are married. This information corroborated the CS's assertion that CS personally knows Jones. *Id.* ¶ 10. Further, the CS's initial description of Jones matched the description contained in Buffalo Police Department Records. *Id.* ¶¶ 10–11. The CS also accurately described a vehicle Jones drives as "a burgundy 2000 Cadillac, N.Y. Reg. CWB–8298." Id. ¶ 10. A 911 tape regarding a July 17, 2004 criminal incident describes "a maroon four-door Cadillac, N.Y. Reg. CWB8298, in the driveway of Jones's residence at the time (the site of the seizure), 26 Wick Street, Buffalo." *Id.* ¶ 12. Records from the state Department of Motor Vehicles showed the vehicle is registered to Karen Y. Burns, "believed to be Jones'[s] mother." *Id.* ¶ 13. Thus, it was reasonable to believe that Burns, as Jones's mother, would have given her permission to drive the Cadillac. Significantly, *Rowell, supra,* does not require the issuing judicial officer to corroborate statements made by confidential informants, as Parker contends. Davis Affirmation ¶ 34. Rather, as in this case, information provided by informants is corroborated when investigators confirm what informants otherwise aver by utilizing other investigative techniques, such as pen registers. *Rowell, supra,* at 903.

In this investigation, confidential sources provided investigators with information regarding Defendants and others which implicated themselves, as well as Defendants. For example, in the Torre Affidavit I, a confidential source told law enforcement "he/she has been an associate of one MARTELLUS JONES (a/k/a Marty Jones) in the distribution of significant amounts of cocaine in the Buffalo area," Torre Affidavit I ¶ 9, and that CS "purchased cocaine from JONES at 593 Grant Street." *Id.* ¶ 16. In making these statements, the confidential source made admissions against his/her own penal interest, a factor courts have considered to establish the reliability of confidential informants. *Rowell*, 903 F.2d at 903.

Based on the facts set forth in the Torre Affidavit I, the court finds Detective Torre supplied County Court Judge D'Amico with facts sufficient to establish the confidential sources's reliability.

**2. Probable Cause as to Defendant Jackson**

■ Jackson further alleges there is no information contained in Affidavit I which establishes that Jackson used the target telephone lines to participate in illegal drug transactions, and that there therefore is a "lack of probable cause to believe that intercepting defendant Jackson's conversations will reveal evidence of a drug distribution conspiracy." Eoannou Affirmation ¶¶ 42, 48. The court finds Jackson's argument that probable cause in the Torre Affidavit I establishing Jackson's criminal involvement was necessary to the issuance of the wiretap order as to Jackson is misplaced. Rather, it was only necessary that probable cause be established with respect to the target phones, not necessarily each person to whom the phones were listed or specific users of the phones. As discussed, the Torre Affidavit I was submitted in support of an eavesdropping order for cellular telephone numbers (716) 228–4556 and (716) 228–4556(PTT), both subscribed to by Karen Burns at 593 Grant Street in Buffalo, New York and used by Martellus Jones, and number (716) 578–1148, subscribed to by Randall Parker at 108 Decker Street in Buffalo, New York and used by Randall Parker.

In seeking electronic eavesdropping orders, the Government is not required to show probable cause with respect to each interceptee. *See United States v. Ambrosio*, 898 F.Supp. 177, 183 (S.D.N.Y.1995) (citing *United States v. Donovan*, 429 U.S. 413, 427 n. 15, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977)). "The Constitution only requires that the application identify the telephone line to be tapped and the particular conversations to be seized." *Ambrosio, supra*, at 184.

Title III requires that a surveillance application include the identity of the person, if known, committing the offense and whose communications are to be intercepted. 18 U.S.C. § 2518(1)(b)(iv). The wiretap statute *does not require that every person whose conversations are intercepted* must be named in the application nor does it expressly prohibit the investigative agency from naming other individuals in the application. . . . Rather, the statute's conditions are satisfied as long as the affidavit names an individual for whom there is probable cause to suspect criminal activity.

*United States v. Trippe*, 171 F.Supp.2d 230 (S.D.N.Y.2001) (underlining added).

Here, there is substantial evidence contained within the Torre Affidavit I to support a finding of probable cause that criminal activity will be uncovered by interception orders for the telephone numbers identified as target numbers in the Torre Affidavit I, and that criminal activity will be uncovered by intercepting communications of Parker, Martellus Jones or Karen Burns over the target phones. Specifically, all of the controlled drug buys described in the Torre Affidavit I were initiated through contacting Parker and Martellus Jones using the target telephone numbers identified by Detective Torre. In addition to the described controlled purchases, the first CS stated he/she contacted Jones "approximately once a month" using target cellular number (716) 228–4556 to purchase cocaine, Torre Affidavit I ¶ 14, reflecting the likelihood that criminal activity occurs over these phone lines. Thus, the fact that the affidavits do not specifically identify Jackson as a user of target numbers does not render the application invalid. *Trippe, supra; Ambrosio, supra*.

In his affidavit, Agent Torre also reports on records which have been subpoenaed for number (716) 578–1148, subscribed to by Randall Parker, which "show more than 2500 calls during the 31 day period, or more than 80 calls average per day," several of which have been identified as "subscribed to or used by known drug traffickers." Torre Affidavit I ¶ 57. Subpoenaed records for (716) 228–4556, used by Martellus Jones "for the period May 1, 2005–June 3, 2005" show, according to Torre, Jones received more than 150 calls per day, on average. *Id.* ¶ 59. Additionally, these records confirm conversations occurred between Parker's cell phone number, (716) 578–1148, a target telephone number, and the telephone number used by Jones, (716) 228–4556. *Id.* ¶ 60. Based on the unusually large number of calls which occurred over the target phone lines and the fact that a reliable confidential source had contacted Parker and Jones using these same numbers to arrange and execute drug transactions, Agent Torre averred that individuals other than Defendants and the confidential sources had used the target telephone lines to participate in illegal drug transactions. Torre Affidavit I ¶¶ 62–68.

To establish probable cause for the challenged wiretaps, it is necessary that under the "totality of the circumstances" set forth in the supporting affidavit, there exists "a fair probability that evidence of a crime will be obtained through the use of electronic surveillance." *Illinois v. Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317. Taken as a whole, the information set forth in the Torre Affidavit I provides ample evidence for Judge D'Amico to conclude that electronic surveillance of the identified telephone numbers would result in the discovery of criminal activity relating to narcotics sales over the target phones.

### 3. Staleness

Jackson contends the controlled narcotics purchase relied upon in the second affidavit ("Torre Affidavit II") which took place on January 14, 2005 was stale at the point the order was issued and did not state any target telephone was used in executing the transaction. The Government does not specifically respond to Jackson's contention, but alleges that information can remain sufficiently fresh in narcotics conspiracy investigations for probable cause purposes over relatively lengthy periods. *See United States v. Feola, supra,* at 1090–91.

"[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of the application becomes less significant.'" *United States v. Ortiz,* 143 F.3d 728, 732 (2d Cir.1998) (quoting *United States v. Martino,* 664 F.2d 860, 867 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982)), *cert. denied sub nom. Nieves v. United States,* 525 U.S. 910, 119 S.Ct. 252, 142 L.Ed.2d 207 (1998). "Indeed, narcotics conspiracies are the very paradigm of the continuing enterprises for which the court have relaxed the temporal requirements of nonstaleness." *Ortiz, supra,* at 733 (internal quotation omitted).

Here, Jackson argues that the controlled purchase on January 14, 2005 "allegedly occurred at least six months to more than a year and a half prior to the affidavit" renders the information too stale to support a finding of probable cause. Eoannou Affirmation ¶ 51. However, Informants' statements given two years before the issuance of a wiretap warrant in a narcotics conspiracy have withstood a staleness challenge given the continuous nature of the conspiracy. *See United States v. Rowell,* 903 F.2d 899, 903 (2d Cir.1990). Further,

judicial determination of probable cause should be given substantial deference by a reviewing court. *Gates, supra,* at 236, 103 S.Ct. 2317; *United States v. Nichols,* 912 F.2d 598, 602 (2d Cir.1990). The resolution of close cases should be determined by the preference accorded to warrants. *United States v. Smith,* 9 F.3d 1007, 1012 (2d Cir.1993).

Even if the court determined that the January drug transaction at issue occurred in 2004 and was too stale to support a finding of probable cause for the wiretap order, this transaction is just one of several described in the affidavit which support Judge D'Amico's finding of probable cause. Torre Affidavit II ¶¶ 28–75. Further, the court stated, *Discussion, supra,* at 7, n. 4, that it considers the chronological sequence of the asserted drug buys, which begin in December 2004, to indicate that the reference to the January 14, 2005 drug buy in the text as taking place on January 14, 2004 was a typographical error. Torre Affidavit II ¶¶ 28–75. Accordingly, there is no basis for Jackson's argument that the relevant information was 1½ years old, and stale.

As stated, *supra,* at 5–6, Jackson also asserts that the January 14, 2005 transaction described in Agent Torre's Affidavit II "fails to state that any of the target telephones were used in the transaction." Eoannou Affirmation ¶ 51. Essentially, Jackson argues Agent Torre's failure to connect target telephone numbers (716) 888–0930 or (716) 885–4287 in the Torre Affidavit II to the controlled narcotics purchase which took place on January 14, 2005 results in insufficient probable cause for the eavesdropping order. *Id.* However, as the Torre II Affidavit amply establishes probable cause as to each target phone when considered in its entirety, Jackson's argument is without merit.

On June 21, 2005, while executing a controlled drug buy with Martellus Jones,

Jones told the CS that the CS must contact Jones at 888–0930 if he wanted to purchase another "big–8" of cocaine within the next few days. Torre Affidavit II ¶ 53. The billing address for cellular number 888–0930 on July 17, 2004 was 26 Wick Street in Buffalo, New York, which was Jones's residence. Torre Affidavit II ¶ 13. Investigators therefore concluded that Jones was then using number (716) 888–0930 to arrange and transact cocaine sales. *Id.* ¶ 54. Further, while intercepting communications authorized by Torre Affidavit I on line 578–1148, investigators overheard Parker speaking to Jackson (who called Parker from 885–4287), discussing what the investigators specifically believed were coded references to drug sales. Torre Affidavit II ¶¶ 87–91. Moreover, telephone service at Jackson's club at 358 Grant Street is through 885–4287, which is billed to 364 Grant Street, a building abutting the club to the north and which may be internally connected to it. *Id.* ¶ 31. Number 885–4287 is subscribed to by Randall Parker. *Id.* Investigators also believed both numbers were being used to facilitate drug distribution of the TALIBAN organization. *Id.* ¶ 99. Based on this information and the totality of the evidence set forth in the Torre Affidavit II, the court finds the affidavit provides sufficient evidence that criminal activity will be intercepted over both phone lines.

Defendants also argue that the challenged wiretaps would not qualify for the good faith exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, Defendants have not shown that, even if one or more of the orders were not supported by probable cause, "(a) the issuing judge abandoned his detached, neutral role; (b) the agent was dishonest or reckless in preparing his affidavit; or (c) the agents' reliance on any order was not reasonable." As such, De-

fendants' motions, even assuming any lack of probable cause, are without merit. Government Response at 26–27.

■ Although the Second Circuit has yet to specifically determine whether *Leon's* good faith exception applies to electronic surveillance such as the intercept orders in this case, other circuits, as well as district courts within the Second Circuit, have concluded *Leon* in applicable. *See, e.g., United States v. Moore,* 41 F.3d 370, 376 (8th Cir.1994) (court considered the discretionary language of 18 U.S.C. § 2518(10)(a) combined with the statute's legislative history, which "expresses a clear intent to adopt suppression principles developed in Fourth Amendment cases," to indicate the exclusionary rule applies to § 2518(10)(a) suppression issues), *cert. denied,* 514 U.S. 1121, 115 S.Ct. 1985, 131 L.Ed.2d 872 (1995); *United States v. Malekzadeh,* 855 F.2d 1492, 1497 (11th Cir. 1988) (court analyzed information contained in the wiretap application under the deterrence theory of the exclusionary rule), *cert. denied sub nom. Shayanfar v. United States,* 489 U.S. 1024, 109 S.Ct. 1149, 103 L.Ed.2d 209 (1989); *United States v. Gotti,* 42 F.Supp.2d 252, 267 (S.D.N.Y.1999) (court extended the good faith doctrine in *Leon* to wiretaps where warrants were not facially deficient and where the agents reasonably relied upon the information contained therein); *United States v. Bellomo,* 954 F.Supp. 630, 638 (S.D.N.Y.1997) (court found "no principled basis" to distinguish wiretap orders from other searches and seizures as to applicability of *Leon* ) (citing cases).

Defendant Jackson's reliance on *United States v. Spadaccino,* 800 F.2d 292, 296 (2d Cir.1986), to support his argument that the "good faith" exception does not apply in this case because New York courts have determined the "good faith" exception does not apply to state court warrants under the New York State constitution, is mis-

placed. In *Spadaccino,* the Second Circuit refused to apply the "good faith" exception to the Exclusionary Rule where state investigators failed to comply with a provision of the Connecticut state wiretap law. *Spadaccino,* 800 F.2d at 295. However, in this case the alleged violation does not arise from an alleged violation of state law. Here, the primary issue is the existence of probable cause based on Torre Affidavits I and II. Government's Surreply at 2. Further, it is established in federal criminal prosecutions that the admissibility of evidence is governed by federal law even if the underlying investigation was conducted exclusively by state officials. *United States v. Smith,* 9 F.3d 1007, 1014 (2d Cir.1993) (citing *United States v. Pforzheimer,* 826 F.2d 200, 204 (2d Cir.1987)). As such, the court finds that even if the Torre Affidavit II were found to lack sufficient probable cause to support the state court's intercept order, Jackson's argument does not avoid application of the "good faith" exception under *Leon.*

## B. Necessity

■ Jackson challenges the necessity of the initial eavesdrop application and the necessity of each application submitted thereafter. Eoannou Affirmation ¶ 52. Specifically, Jackson contends that although both affidavits contained language that "[n]ormal investigative procedures reasonably appear unlikely to succeed in obtain[ing] the evidence sought and/or would be too dangerous based upon the facts.," this averment was unsupported by the facts of the underlying investigation. *Id.* Rather, according to Jackson, normal investigative techniques were in fact succeeding, and the only information unavailable to investigators when the eavesdropping application was initially submitted to Judge D'Amico was information for which, based on the Torre Affidavit I, "there was no probable cause

to believe [a crime was being committed]." Eoannou Affirmation ¶ 53. Further, Jackson contends investigators could have ascertained the source of supply and "means of distribution" in Western New York, in addition to obtaining "significant amounts of hard evidence of the illegal activities," and that several conversations related to drug trafficking between the CS and members of the TALIBAN organization were consensually recorded by the CS and monitored by agents. *Id.* ¶ 53–54. Finally, Jackson argues the eavesdropping orders were unnecessary because the supporting affidavit gave no reason to suspect anyone other than those listed in the affidavit were involved in the alleged conspiracy.[5] *Id.* ¶ 57.

The Government counters that "the affidavits clearly evidence necessity for the interception." Government's Response at 27. Specifically, the Government contends that both Torre affidavits list investigative techniques which were attempted but insufficient or which were not used and the reasons why, including the use of informants and undercover agents, grand jury subpoenas, physical surveillance, target interviews, pen register information reviews and search warrants. *Id.* at 30–31 (referencing Torre Affidavit I at ¶¶ 62–81, and Torre Affidavit II at ¶¶ 92–141). The Government further contends both affidavits contain facts which are "more than minimally adequate" to support the conclusion that employing traditional investigative techniques would not realize all the objectives of the investigation, such as "to gather sufficient, admissible evidence to convict—not merely to identify—all of the members of the drug distribution ring and to remove the largest possible quantity of narcotics from the channels of [narcotics] trade." Government Response at 31.

As required by 18 U.S.C. § 2518(3)(c) (" § 2518(3)(c)"), an application for an electronic intercept order must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous." The purpose of this requirement is not to render electronic surveillance an investigative tool of last resort, but to apprise the judicial officer of the progress of the investigation and the difficulties inherent in the use of normal investigative techniques. *United States v. Torres,* 901 F.2d 205, 231 (2d Cir.1990), *cert. denied sub nom. Cruz v. United States,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Thus, courts have held that the requirement of § 2518(3)(c) must be construed in a practical, common sense and realistic fashion. *United States v. Steinberg,* 525 F.2d 1126, 1130 (2d Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). Courts have therefore held that the statute does not require that all possible techniques be exhausted in fact before a wiretap may be authorized, but, rather, "[a]n affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every possible means of the investigation has not been exhausted." *United States v. Terry,* 702 F.2d 299, 310 (2d Cir.), *cert. denied sub nom. Williams v. United States,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983).

In this case, each of the challenged Torre affidavits demonstrate compliance with § 2518(3)(c). Specifically, each of the Torre affidavits state that Detective Torre, a highly experienced narcotics investiga-

---

**5.** Jackson does not specify to which affidavit he is referring for the facts he relies on to support this contention.

tor, has been directly involved in the investigation of the instant alleged narcotics trafficking conspiracy and why other investigative techniques are not likely to be effective, and which techniques have been tried, but have failed to provide complete information regarding the scope and operation of the conspiracy. Torre Affidavit I ¶ 1. For example, Detective Torre averred that surveilling Defendants was difficult because the private club is fortified with a front door which is equipped "on both sides with a steel bar to prevent forced entry," making public access or observations difficult. Torre Affidavit II ¶ 108(f). Additionally, video surveillance cameras monitor the exterior of the club, and "[its] door is operated by a remote buzzer system." *Id.* Torre also states close surveillance of the targets, including Defendants, is compromised by Jackson's, Jones's, and Parker's familiarity with several DEA and Buffalo Police officers participating in the investigation, and the fact that conversations between Jackson, Jones and Parker and the narcotics distributors or suppliers could not be overheard. Torre Affidavit I ¶ 72(f); Torre Affidavit II ¶ 108(g). Further, Torre states that Jones and Parker drove evasively on several occasions, "making automobile surveillance difficult." Torre Affidavit I ¶ 72(e); Torre Affidavit II ¶ 108(e). The investigation was further hampered by Jones and Parker who "appeared to use lookouts and engaged in counter-surveillance." Torre Affidavit I ¶ 72(g); Torre Affidavit II ¶ 108(h).

Additionally, Torre averred suspected narcotics distributors like Jackson and Parker, do not keep large quantities of narcotics in their vehicles, and that a search warrant for a vehicle or premises would not reveal the source of supply of the narcotics even if narcotics were discovered as a result of the search. Torre Affidavit II ¶ 108(i)-(j). Additionally, Torre stated that interrogating any buyers or sellers involved in Defendants' narcotics transactions would "alert the participants to the existence of this investigation" and cause them to change the "methods and places of their operation." Torre Affidavit I ¶ 72(l); Torre Affidavit II ¶ 123(k). Torre also represented that a grand jury investigation was impractical because, once witnesses are immunized to secure their cooperation as witnesses, they are exempt from prosecution, further burdening the investigation. Torre Affidavit II ¶ (l). Further, Torre stated that "cooperation [in this case] is unlikely even with immunity," and "it is unlikely that co-conspirators would have any knowledge of the storage locations for drugs, or for money, or the ultimate source of cocaine." *Id.* Based on his personal experience, Torre averred that "conventional" search and seizure is unlikely to cultivate enough evidence to convict any of the co-conspirators because confiscated records will likely contain coded material which can only be de-coded through telephone interception. Torre Affidavit I ¶ 72(m); Torre Affidavit II ¶ 108(n). As Detective Torre stated,

> Without telephone interception, it would be impossible to determine whether these code names and numbers refer to distributors, buyers, wholesalers or financiers of the illegal distribution business. Further, without electronic surveillance it would be impossible to discover the identities of drug users or couriers in order to utilize them as witnesses at a later time.

Torre Affidavit II ¶ 108(n).

Detective Torre thus concluded that electronic surveillance is the only way to ascertain the scope of the particular suspected criminal organization under investigation. Torre Affidavit I ¶ 72(c); Torre Affidavit II ¶ 108(c).

It is well established that an agent's expert opinion is an important factor to be considered by a judicial officer when mak-

ing a probable cause determination for purposes of authorizing a search warrant application, and should be considered a factor contributing to objective good faith. *United States v. Riley,* 906 F.2d 841, 845 (2d Cir.1990); *United States v. Benevento,* 836 F.2d 60, 71 (2d Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985); *United States v. Maneti,* 781 F.Supp. 169, 177 (W.D.N.Y. 1991). As the probable cause standard which applies to search warrants is also that applied to eavesdropping applications, *United States v. Fury,* 554 F.2d 522, 530 (2d. Cir.1977), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977), an agent's expert knowledge may also be considered by a judge in authorizing electronic surveillance. *See United States v. Montalvo,* 882 F.Supp. 230, 232 (D.P.R.1995) (in evaluating whether other investigative procedures have been tried and failed or why they are unlikely to succeed if implemented, "the Court may consider the statements by an agent in his affidavit that are based in part upon said agent's special training").

In his first affidavit, Detective Torre explains that, based on his experience and participation in narcotics investigations, he is familiar with how telephones, cellphones and pagers are used to facilitate the distribution of narcotics. Torre Affidavit I ¶ 2. Torre further stated that, based on his past experience with drug distribution networks and the facts of this case, communications concerning and arranging drug transactions will continue to occur once the eavesdropping order has been authorized. *Id.* ¶ 76. Torre averred that, "in recent years, narcotics dealers in the Buffalo area have made frequent use of telephones, mobile telephones, and paging devices, often in combination with each other," *id.* ¶ 65, and that, based upon his personal experience, Torre knows that "conventional search and seizure likely would not produce sufficient evidence on which to base drug convictions of JONES' [sic] and/or PARKER'S co-conspirators because any drug distribution records that might be obtained through the execution of a search warrant would most likely contain coded names and numbers." *Id.* ¶ 72(m).

Similar affidavits, stating that despite use of visual surveillance and pen registers employed against suspected members of the conspiracy for several months during the interceptions and the receipt of informant information, agents were unable to determine the extent of a drug trafficking conspiracy, have been held sufficient to establish the need for an intercept order. *See United States v. Torres,* 901 F.2d 205 at 231–32; *United States v. Young,* 822 F.2d 1234, 1237 (2d Cir.1987); *United States v. Puglisi,* 790 F.2d 240, 241–42 (2d Cir.), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986). Therefore, the facts set forth in the Torre affidavits satisfy the requirements of 18 U.S.C. § 2518(3)(c).

## C. Defendant Parker's Remaining Contentions

■ Defendant Parker also asserts that the instruments authorizing the interceptions were facially insufficient, and the interceptions did not conform with the intercept order. Davis Affirmation ¶ 30, referring to 18 U.S.C. § 2518(10)(a)(ii), (iii). 18 U.S.C. § 2518(10)(a) states

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a)(i)-(iii).

However, Parker fails to identify how the warrants are facially insufficient or how interception did not conform with the authorizing court order. Neither wiretap warrant reveals any irregularity requiring suppressing the evidence obtained thereby. *See United States v. Vento,* 533 F.2d 838, 861 (3d Cir.1976) ("It was not the intent of Congress to mandate suppression of evidence for every facial irregularity in a warrant."). The warrants for phone numbers 885–4287 and 578–1148 were authorized for a thirty day period or until the evidence sought is obtained, whichever is shorter, effective from the date the warrant was issued, with instructions to minimize eavesdropping contained therein, and were signed and dated by Judge D'Amico, the issuing judicial officer. Additionally, the warrants identified the users and subscribers of said numbers. As such, there is no basis to find that the warrant failed to comply with 18 U.S.C. § 2518(10)(a)(ii)-(iii).

## II. *Suppression of Physical Evidence*

Defendant Parker moves to suppress any evidence seized from 39 Allendale Drive in Cheektowaga, New York and 108 Decker Street in Buffalo, New York on grounds that (i) the affidavit supporting the search warrant lacks probable cause; (ii) the affidavit relies entirely on hearsay and "does not contain information sufficient to enable a 'neutral magistrate' to assess the credibility of the confidential informant"; and (iii) the magistrate was unable to corroborate information provided

by the confidential informant given the information contained in the affidavit. David Affirmation ¶ 34. As Jackson moved to join in motions submitted by Parker, the court considers Parker's motion as applicable Jackson as well. For reasons not explained, the Government does not address Parker's motion (and thus Jackson's) to suppress physical evidence.

As discussed, Discussion, *supra,* at 10, the Supreme Court has established the "totality of the circumstances" test for the determination of probable cause under the Fourth Amendment with regard to a search warrant. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Further, resolution of marginal cases should be determined by the preference afforded to warrants. *Smith, supra,* at 1012.

Under the totality of the circumstances test, a finding of probable cause may also be based, in whole or in part, on hearsay from a reliable informant. *Gates, supra,* at 243–46, 103 S.Ct. 2317; *Smith, supra,* at 1013. An inquiry into the reliability of an informant is usually of two general types: (1) an inquiry into the informant's veracity, and (2) an inquiry into the quality of the informant's source of knowledge, such as whether the information is based on first hand observations, as opposed to rumor or innuendo. *United States v. Wagner, supra,* at 72–73. In assessing a probable cause determination based on an informant, "[t]he only questions for the Court are whether the [affiant's] reliance on that

informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance" of the warrant. *Smith, supra.*

As discussed, *Discussion, supra,* at 12, an informant's admissions against penal interest is a factor establishing the reliability of the confidential source. In the instant case, DEA Special Agent Joseph S. Bongiovanni ("Agent Bongiovanni") stated in his affidavit submitted in support of the search warrants challenged by Parker ("Bongiovanni Affidavit") that the confidential sources (referred to in the affidavit as "CS–1, CS–2 and CS–3") made admissions against their penal interest in the affidavit by admitting to personal involvement in the alleged criminal activity relating to Parker and witnessing the alleged criminal activity. Bongiovanni Affidavit ¶¶ 5–21. Further, information provided by these confidential sources has been corroborated by "independent sources of information," and "appears to be highly accurate and reliable." *Id.* ¶¶ 5, 10, 19. For example, CS–1 and CS–2 both informed law enforcement that Maurice Fisher, a/k/a "Reese," will run the TALIBAN organization if Jones goes to jail. *Id.* ¶ 11. Additionally, surveillance confirmed information provided by CS–1, CS–2 and CS–3 regarding a burgundy Cadillac driven by Jones and a Blue Ford Expedition driven by Jones. *Id.* ¶¶ 9; 12–13; 21. Finally, there is no indication in the affidavit that the informant was a professional informant. These factors combined meet the standard set by the court in *Rowell, supra,* for establishing the reliability of informants.

Bongiovanni, who has been employed as a DEA agent since 1998, also submitted his affidavit in support of the search warrant for 39 Allendale Drive in Cheektowaga and 108 Decker Street in Buffalo. Bongiovanni Affidavit ¶ 1; ¶ 45(A–D); ¶ 46(A–F). Bongiovanni's affidavit specifically identified the property to be seized. *Id.* ¶ 60(a-f).

While Bongiovanni admitted he had "no specific information" connecting the drugs to either premises in his affidavit, Bongiovanni explains that based on his experience and participation in narcotics investigations, dealers involved in narcotics trafficking, such as those who deal in quantities of cocaine and cocaine base, frequently maintain at their residences or other residences, cocaine and currency to finance their business, as well as records and other papers relative to the transportation, ordering, sale and distribution of controlled substances. *Id.* ¶ 61(a-g). In *United States v. Fama, supra,* the court held

> While probable cause to arrest does not necessarily give rise to probable cause to search ... [the affiant] had stated in the affidavit that his ten [sic] year experience as a DEA agent had taught him the major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers, and other documents evidencing their criminal activities. A number of cases have ruled that an agent's expert opinion is an important factor to be considered by the Judge reviewing a warrant application. * * * Thus it should also be a factor contributing to objective good faith.[6]

*United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) (internal citations omitted); Bongiovanni Affidavit ¶ 106(h).

Based on the holding in *Fama, supra,* that an agent's expert opinion that drug traffickers typically maintain "large amounts of cash, drugs, books, ledgers, and other documents evidencing their criminal activities ... should be considered a factor contributing to objective

---

6. Bracketed material added.

good faith," and because the challenged search warrants in this case authorized the executing agents to search not only for quantities of cocaine, but also for "books, records, receipts, notes, [and] ledgers," which are "fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841 and 846," at 39 Allendale Drive in Cheektowaga and 108 Decker Street in Buffalo, the court finds the absence of any specific information connecting suspected drugs to these premises in the agent's supporting affidavit does not invalidate the search warrant. *See Fama,* 758 F.2d at 838 (court considered opinion of agent employed by the DEA for 10 years that "major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities" a factor contributing to "objective good faith"); *United States v. Dillon,* 810 F.Supp. 57, 62 (W.D.N.Y.1992) (court found evidence uncovered by canine sniff in Buffalo airport and magistrate judge's reliance on Buffalo police officer's six-year experience as a DEA agent reasonable to support probable cause determination underlying warrant application for Defendant's residence). The gas utility for 108 Decker Street is registered in Defendant Parker's name. Bongiovanni Affidavit ¶ 45(B). This suggests that Defendant Parker either resides or does business at this residence. The gas utility for 39 Allendale is registered in a Johnnie R. McDaniel's name, who is the alleged girlfriend of Defendant Parker. *Id.* ¶¶ 46(B), (C). Parker resided at 39 Allendale after he was released from the hospital for injuries sustained from a shooting in June 2003. *Id.* ¶ 45(A–D); ¶ 46(A–F). As *Fama* supports issuance of the search warrant directed to a narcotics trafficker's home, Parker's motion to suppress physical evidence obtained from these premises, which are likely places where Parker resided, is without merit.

Under the totality of the circumstances as set forth in the supporting affidavit, the court finds the issuing judicial officer made a "practical, common-sense decision," that there was "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. 2317 (1983). Accordingly, Parker's (and Jackson's) motions to suppress on this basis should be DENIED.

### III. *Request for a Franks Hearing*

Parker moves for a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), "to determine the admissibility of the intercepted communications." Davis Affirmation ¶ 31. Other than alleging "the communications were unlawfully intercepted; that the order or authorization or approval under which the communications were intercepted is insufficient on its face; and that the interception was not made in conformity with the authorization or approval," Davis Affirmation ¶ 30, Parker does not provide any facts to support this assertion. The Government responds that Parker's request for a Franks hearing is an attempt to cross-examine potential government witnesses, and contends that Parker failed to show that Detective Torre made knowing, false statements in his affidavits and, absent such showing, a *Franks* hearing must therefore be denied. Government Response at 33–34.

The Second Circuit has held

To be entitled to a *Franks* hearing, a defendant must make 'a substantial preliminary showing' that (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding. If, after setting aside the alleg-

edly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the District Court need not conduct a *Franks* hearing. *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir.1998), *cert. denied*, 526 U.S. 1028, 119 S.Ct. 1274, 143 L.Ed.2d 368 (1999); *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985).

Despite any omissions which may be found in the affidavits, the court has determined, Discussion, *supra*, at 11–22, that the affidavits contain "sufficient information to support a finding of probable cause". Therefore, absent a showing, as is Defendant's burden, *Salameh, supra*, that Detective Torre made deliberate misstatements, knowingly provided false information or displayed a "reckless disregard for the truth" in his averments to Judge D'Amico, which Parker has failed to point out, no *Franks* hearing is required.

### CONCLUSION

Based on the foregoing, Defendants' motions (Doc. Nos.15, 16) should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendants.

SO ORDERED.